Katharine Battaia Clark
Thompson Coburn LLP
2100 Ross Ave., Suite 3200
Dallas, Texas 75201
Phone: (972) 629-7100
Fax: (972) 629-7171
kclark@ThompsonCoburn.com

Nino Przulj (*pro hac vice* application to come)
Thompson Coburn LLP
505 N. 7th Street, Suite 2700
St. Louis, MO 63101
Phone: (314) 552-6559
Fax: (314) 552-7000
nprzulj@thompsoncoburn.com

Proposed counsel for Areya Holder Aurzada, Subchapter V Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 21-31134-SGJ-11 |
| NIEMAN PRINTING, INC. | § | |
| | § | Chapter 11(V) |
| Debtor. | § | |

## TRUSTEE'S MOTION TO CONVERT AND BRIEF IN SUPPORT

Areya Holder Aurzada, Subchapter V Trustee with expanded powers (the "Trustee"), in the above-captioned case (the "Case"), submits this motion and brief in support (the "Motion") pursuant to sections 105 and 1112 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), for entry of an order (i) converting the Case to a case under chapter 7 of the Bankruptcy Code and (ii) granting such other relief as this Court deems just, proper, and equitable. In support of the Motion, the Trustee respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicates for the relief sought herein are sections 105(a) and 1112 of the Bankruptcy Code.

## RELEVANT BACKGROUND

Procedural Background

4. On June 17, 2021, (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V.

5. On June 21, 2021, the United States Trustee filed his Notice of Appointment of H. Thomas Moran II as the Subchapter V trustee. Dkt. 12.

6. The section 341 meeting of creditors (the "341 Meeting") was held in this case on July 26, 2021. Garrett Graves appeared and testified at the 341 Meeting on behalf of the Debtor. A continued 341 Meeting was held August 27, 2021 at which Mr. Graves further testified on behalf of the Debtor, and the meeting was further continued until September 24, 2021 due to the need for further amendments to the Debtor's Schedules and Statement of Financial Affairs.

7. On July 29, 2021, the United States Trustee's office filed its Motion to Authorize the Appointed Subchapter V Trustee to Perform Expanded Duties in Accordance with 11 U.S.C. § 1183(b) and/or Remove the Debtor-In-Possession Under 11 U.S.C. § 1185, or, in the alternative, convert to chapter 7 under 11 U.S.C. § 1112(b) (the "Expansion Motion"). On August 9, 2021, the Court held a hearing on the Expansion Motion. The Trustee incorporates the facts and evidence adduced at the hearing and in the Expansion Motion in this Motion as if set out fully herein.

8. On August 10, 2021, this Court entered an Order Removing the Debtor as the Debtor-in-Possession in Accordance with 11 U.S.C. § 1186 and Expanding the Subchapter V Trustee's Duties in Accordance with 11 U.S.C. § 1183. Dkt. 90.

9. On August 17, 2021, the U.S. Trustee gave notice substituting Areya Holder Aurzuda as Subchapter V Trustee. Dkt. 98. The Trustee began performing her expanded duties in earnest, including, but not limited to, beginning a review of the Debtor's books and records, giving priority to confirming the Debtor's current cash position and projections for financial performance in the short-term.

10. On August 26, 2021, the Court held an emergency status conference at which the Trustee reported to the Court and parties in interest that the Debtor's cash position is so precarious that the Debtor's business is in serious danger of having to shut down, even before a proper sale process can begin on excess equipment and before a plan can be filed. As described (i) at the status conference, (ii) in the Expansion Motion and the hearing thereon, and (iii) in this Motion, and as will be further presented at the hearing on this Motion, it does not appear the Debtor will be able to pay its post-petition debts as they come due and is otherwise in danger of financial collapse, even with the benefit of the automatic stay and other bankruptcy protections. For the reasons stated herein, the Trustee believes, in her business judgment, that conversion of this case to one under Chapter 7 is in the best interest of the Debtor's estate and its creditors.

Factual Background

11. Nieman Printing, Inc. is a printing company in Dallas that has been in business for more than 30 years. The company previously ran a large-scale, round-the-clock printing operation, with more than 130 employees.

12. Over the last several years, the business began to experience significant cash flow issues and financial distress. But for the sale of assets and/or the factoring of receivables, the company would not have been able to sustain operations.

13. Married partners, Joan and Michael Nieman, previously owned the Debtor. In October 2020, the Niemans sold the business to SGM Technologies, Inc. Nieman's current CEO and president, Mr. Garrett Graves, owns 100% of SGM Technologies. At some point after the purchase but before the Petition Date, three major events occurred:

- Employees walked out en-masse due to the company missing payroll (which was eventually made two days late) and that walk out effectively ended the Debtor's ability to run its large-scale printing operation.

- Mr. Graves sold a printing press out of trust to the tune of $1 million (as further detailed in the associated pending adversary proceedings).

- Since the October 2020 sale, the Debtor's cash has been used to pay SGM Technologies' debt incurred to purchase Nieman Printing and also incurred in previous, unrelated SGM Technologies' transactions. *See*, *e.g.*, Debtor's SOFA [Dkt. 49] (referencing $125,000 transferred within a month of the bankruptcy filing for the benefit of an unsecured creditor of SGM Technologies).

14. The Debtor stated in its pre-plan filing status report that the purpose of this bankruptcy is essentially to restructure its debt and business model, with the new business model being a much smaller, digital-printing focused operation. Dkt. 62, ¶¶9-11. In furtherance of the new business model, the debtor seeks to liquidate equipment it no longer needs and to shed the majority of its leased space (going from 150,000 square feet spread across multiple buildings to just one consolidated space). *Id.*, ¶¶11-20.

15. In the first 10 days of her appointment, the Trustee has unfortunately found more problems than were revealed through the Expansion Motion. The Trustee is fundamentally unable to affirm whether the Debtor, even in its downsized business model, will be able to cash flow in order to pay its basic costs of operation, much less service debt and rent.

16. As of the filing of this Motion, the Debtor has approximately $60,000 in its bank account after funding this week's payroll. After reducing its work force, the monthly payroll for the Debtor is currently approximately $120,000.00 per month. The Debtor continues to incur some

amount of administrative rent charges and other post-petition debt obligations which are not being paid (such as an equipment lease to creditor Huntington National Bank). The Debtor has not provided a reliable statement of accounts receivable, projected expenses, or a report of work-in-process or in-prospect.

17. Thus, the company's cash position is precarious. It is unclear what money is due to the company and whether that money is collectable on a timeline that will assure basic costs of operations can be met, not to mention debt service and funds to pay for the chapter 11 process.

18. Complicating matters, the Debtor: (a) maintains three sets of books on three different systems, making day-to-day operations and a reliable understanding of the company's cash position nearly impossible to determine; (b) does not have a reliable inventory of equipment the Debtor owns, leases, or is paying off, rendering it unclear what equipment, if any, can be sold free and clear or whether proper notice has been given; and (c) does not have a reliable listing of ongoing equipment lease or service contract obligations. The Debtor's schedules also include some debts of SGM Technologies (albeit those debts are not delineated as such) and are otherwise deficient, making it impossible to tell whether sufficient notice of the bankruptcy has been provided and to identify Debtor's true obligations. For example, the Debtor's Schedule E alleges debts owed to parties such as Charles Covey, Steve Graves, Dani Norton, ColorDynamics, Little Print Shop, Marvel Printing Company, Michael Hornsby Creations, Page DNA, Rick Schaffer, and Six B Labels Corporation. *See* Dkt. 48. However, Mr. Graves admits the debts to Covey, Graves, and Schafer are debts of SGM Technologies and paper records reviewed at the Debtor's offices reflect invoices to SGM Technologies from the balance of the referenced creditors.

19. Post-petition, the Debtor's real property has been vandalized. The copper wiring was removed from various segments of the Debtor's leased space, leaving the Debtor without power in

most of its leased space for more than two weeks as of the filing of this Motion. It is very dark and of course the Texas heat can be unbearable. The lack of power has made operations in those suites impossible and the ability to run an auction process on equipment in those buildings difficult, at best.

20. Dallas County has a blanket (statutory) lien for outstanding ad valorem taxes of approximately $370,000. *See* Claim No. 1-1. Moreover, the Internal Revenue Service has filed a claim alleging, in part, more than $190,000 in unpaid payroll and excise taxes. *See* Claim No. 31-1. At the continued August 27, 2021 341 Meeting, Mr. Graves admitted the Debtor withheld funds from employee paychecks, but did not remit those funds to the IRS. The pre-petition unpaid payroll tax debt to the IRS is not reflected in the Debtor's schedules. Following the Trustee's appointment, it was revealed that, post-petition, the Debtor had also failed to pay payroll taxes, but the Trustee corrected that issue. The Trustee also discovered and rectified unpaid post-petition health insurance.

21. The Trustee performed a UCC search, and has confirmed that the following creditors have active UCC lien filings against the Debtor:

- People's Capital and Leasing Corp.[1]
- Hewlett-Packard Financial
- Xerox Corporation
- Eastman Kodak Company
- ASH Automated Packaging Systems, Inc.
- TCF Equipment Finance
- PNC Equipment Finance, LLC
- Joan Milstead Beneficiary Trust
- Michael Allen Asset Trust
- The Oldham Group

The Debtor failed to list many of these creditors on its schedules as potentially secured creditors, including, for example, The Oldham Group. *See* Dkts. 48 and 87.

---

[1] People's Capital asserts a lien on several pieces of equipment and may assert a blanket lien, though the UCC filings as the Trustee has reviewed them do not support the perfection of a blanket lien.

22. A review of the Debtor's recent bank statements (pre- and post-petition) demonstrates several post-bankruptcy transfers to or for the benefit of insiders. For instance:

| Post-Petition Transfer Date | Amount | SGM Technologies Creditor Receiving Payment |
|---|---|---|
| 6/17/2021 | $15,000 | Jared Perciful |
| 6/18/2021 | $50,000 | Steve and Loralee Graves |
| 6/23/2021 | $1875 | Metro Printing |
| 6/28/2021 | $4,180 | BBVA |
| 6/30/2021 | $1875 | Metro Printing |
| 7/7/2021 | $1875 | Metro Printing |
| 7/14/2021 | $1875 | Metro Printing |
| 7/21/2021 | $1875 | Metro Printing |
| 7/28/2021 | $1875 | Metro Printing |
| 8/4/2021 | $1875 | Metro Printing |
| 8/11/2021 | $1875 | Metro Printing |
| 8/17/2021 | $1875 | Metro Printing |
| **TOTAL**[2] | **$86,055.00** | |

Thus, there have been unauthorized transfers post-bankruptcy to apparently satisfy debts of the Debtor's owner, SGM Technologies, which the Trustee has now stopped.

---

[2] *See* Exhibit A-1 through A-3 (Bank Statements). The Trustee is still investigating pre- and post-petition transfers from the Debtor's bank accounts. The transfers set out herein are a representative sample only.

23. Mr. Graves testified at the (continued) 341 meeting that SGM Technologies has no current operations and no resources to pay its debts. The Trustee conducted a UCC search regarding SGM Technologies, and there are multiple secured creditors that may assert a blanket lien as against SGM Technologies. Mr. Graves testified at the (continued) 341 meeting that without the ability to use funds generated from the business of Nieman Printing, SGM Technologies will not be able to pay its debts. Therefore, a default by SGM Technologies on its debts may have a further negative impact on this Debtor's estate, depending on the extent of SGM Technologies' debts and the collateral pledged to secure those debts.

24. The Debtor has not listed many of SGM Technologies' creditors in its schedules (as notice-only parties or otherwise), which is problematic to this Debtor because (i) Mr. Graves has testified that equipment SGM Technologies owns is at the Debtor's premises and (ii) the Debtor wants to liquidate a significant portion of the equipment in its leased space. Without knowing (1) which entity owns or leases what equipment and (2) what debt obligations are associated with that equipment [including any and all asserted blanket liens], proper notice of a sale is presently not possible, nor is an evaluation of whether such a sale will even benefit the Debtor's estate.

25. The Trustee has been working diligently to both gather information and to have the Debtor's remaining employees gather information that is critical to answering threshold questions regarding the Debtor's current and future cash position, but that work has been difficult and costly to the estate. And, the information gathered thus far is insufficient to allow for a reliable evaluation of this Debtor.

26. At the August 27, 2021 emergency status conference, the Trustee advised the Court and parties in interest that she may have no choice but to shut down the business of the Debtor, even

before a hearing on this Motion can be heard. If, in the Trustee's business judgment, a shut down is required, the Trustee will file and serve notice of that action.

27. The Trustee is aware as a result of statements made by certain creditors at the emergency status conference that certain creditors would like the Debtor to have the opportunity to file its plan in accordance with the Subchapter V requirements. Accordingly, the Trustee requests that this Motion be heard on normal notice so that the Debtor will have the opportunity to file its plan by the September 15, 2021 deadline; provided, however, as stated in the previous paragraph, it may not be possible to sustain operations for that period, despite best efforts.

## RELIEF REQUESTED

28. By this Motion, the Trustee respectfully requests entry of an order pursuant to sections 105(a) and 1112 of the Bankruptcy Code converting this case to one under chapter 7 of the Bankruptcy Code for cause.

## BRIEF IN SUPPORT

**A. Cause Exists Pursuant to Bankruptcy Code Section 1112 to Convert the Debtor's Chapter 11, Subchapter V Case to a case under Chapter 7.**

29. Pursuant to Bankruptcy Code section 1112, cause exists to convert this case to chapter 7 for the benefit of all the creditors and the Debtor's estate. There is little or no prospect for reorganization of the Debtor or its affairs and all that needs to be done to administer the bankruptcy estate can be done in Chapter 7. Given the Debtor's uncertain cash position and the complications presented by, among other things, the Debtor's deficient record keeping and the commingling of the Debtor's assets and liabilities with non-debtor SGM Technologies, what remains to be done can best be done by a Chapter 7 trustee, including analyzing whether to monetize or abandon remaining assets, addressing and monetizing the multiple remaining offensive claims of the Debtor's estate, and resolving and objecting to claims against the Debtor's estate. Time is passing, and the Trustee is concerned that, among other

things, the Debtor is at serious risk of missing payroll and associated employee costs and that the Debtor's continued accrual of chapter 11 administrative burdens will make confirmation of a plan and the feasibility of any such plan nearly impossible. Even if there were a source for a cash infusion (though none appears presently available), it is unclear how much runway the Debtor would need to present a reliable plan for reorganization.

30. The primary purpose of a chapter 11 subchapter V case is to restructure a debtor's affairs and finances so that the Debtor may continue to operate, retain existing ownership, and provide a benefit for all stakeholders, including creditors and the debtor.

> [W]hen there is no reasonable likelihood that the statutory objective of reorganization can be realized ..., then the automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interests of creditors, the intended beneficiaries. In that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of creditors.

*In re Timbers of Inwood Forest Assoc.'s, Ltd.*, 808 F.2d 363, 373 (5th Cir. 1987).

31. Under Bankruptcy Code section 1112(b)(1), a court shall convert a chapter 11 case to a chapter 7 case "for cause" upon a request of a party in interest. Section 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, *the court shall convert a case under this chapter to a case under chapter* 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ....

11 U.S.C. § 1112 (emphasis added).

32. Prior to the 2005 amendments to the Bankruptcy Code, section 1112(b) contained the language "may convert" as opposed to the "shall convert" language that now appears in section 1112(b). *In re Midwest Props. of Shawano, LLC,* 442 B.R. 278, 283 (Bankr. D. Del. 2010) ("[T]he statutory language has been changed from the permissive ... to mandatory."). A court directly addressing this change to section 1112(b) of the Bankruptcy Code observed:

> If cause for dismissal or conversion to Chapter 7 exists discretion not to dismiss or convert is limited to those instances in which the court makes specific findings that unusual circumstances establish that the requested conversion or dismissal is not in the best interests of creditors and the estate[.]

*In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D. S.C. 2007).

33. Here, this Court is authorized to convert the Debtor's chapter 11 case to one under chapter 7 upon a showing of cause.

34. Courts make a determination of cause on a case-by-case basis. *See In re Fonke*, 310 B.R. 809, 816 (Bankr. S.D. Tex. 2004); *In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015). As set forth herein, the totality of circumstances shows the Debtor's case should be converted to a chapter 7 case.

35. Bankruptcy Code Section 1112(b)(4) provides a nonexclusive list of what constitutes cause under Bankruptcy Code section 1112, which reflects, in relevant part, that the term "cause" includes:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation …
> (B) gross mismanagement of the estate …
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public …
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors …
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter …
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any) …
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief …

11 U.S.C. § 1112(b)(4).

36. Here, cause exists to convert this case to a Chapter 7 case under section 1112(b)(4) of the Bankruptcy Code because:

- The Debtor's estate is continuing to diminish as bankruptcy administrative expenses increase on top of the Debtor's existing costs of operations, coupled with the lack of clarity in the Debtor's records, as well as uncertainty with respect to the

Debtor's cash flow and the claims against equipment located at the Debtor's offices makes the reasonable likelihood of rehabilitation very low;

- Prior to the expansion of the Trustee's duties, the Debtor's estate has been grossly mismanaged. Payroll taxes were not paid pre-petition and would not have been paid post-petition but for the Trustee's insistence of the same. Material amounts of money was paid to or for the benefit of insiders in the month prior to the Debtor's bankruptcy filing, including $125,000 to a creditor of SGM Technologies and nearly $100,000 to Mr. Graves's parents [Dkt. 49, §§3.50, 4.2] while at the same time checks owed to critical vendors to the Debtor (such as a paper supplier and ink provider) were bounced. Even after the bankruptcy was filed (but prior to the Trustee investigating expenditures), the Debtor paid at least $86,000 to satisfy debts of a non-debtor entity (and the Trustee expects there may be more such transfers that have not yet been fully identified);

- It is not clear the Debtor is maintaining appropriate insurance; and with the persistent risk of vandalism at the Debtor's facilities due to the decreased hours of operations, there is continued risk to the Debtor's estate and the possibility of further vandalism and/or heat-related damage to property;

- Dallas County, the senior-secured creditor of the Debtor, claims the Debtor has used cash collateral in an unauthorized manner when the Debtor did not segregate sale proceeds from the sale of a piece of equipment that was approved early in the case.

- The Debtor has failed to timely file its Monthly Operating Report and certain other information requested by the United States Trustee's office. The Debtor's records are such that preparing a reliable Monthly Operating Report is unlikely if not impossible. For instance, the Debtor has not provided a list of outstanding accounts receivable (which is required to be attached to the MOR) and it is not clear what payables have come due post-petition and yet remain unpaid (if any);

- But for the Trustee's investigation regarding the status of the Debtor's tax payments (excise, sales tax, payroll tax, etc.), the Debtor would still have post-petition tax obligations outstanding.

37. The totality of the circumstances exigent in this case in comparison to the sample elements laid out in the Bankruptcy Code demonstrates that this case must be converted to one under Chapter 7 for cause.

**B. The Equities Favor Converting the Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code.**

38. The relief sought herein is also appropriate pursuant to this Court's equitable powers under Bankruptcy Code section 105(a). *See In re Schriock Const., Inc.*, 167 B.R. 569, 575 (Bankr. D. N.D.

1994) (court considered equitable factors in granting a motion to convert a chapter 11 case to a chapter 7 case); *see also In re Jacobsen*, 609 F.3d 647, 662 (5th Cir. 2010) (permitting conversion of a Chapter 13 case to a Chapter 7 case pursuant to section 105 because "under the Bankruptcy Code and Supreme Court precedent, a bankruptcy court has the power to grant an outstanding conversion motion and deny a bad-faith debtor's request for dismissal made in response to that motion"); *In re Israel Sand, LLC*, 569 B.R. 433, 439 (Bankr. S.D. Tex. 2017) (noting the Fifth Circuit's endorsement of reading section 1112(b) "in conjunction with § 105").

39. It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the administration of bankruptcy proceedings. *See In re Official Comm. of Unsecured Creditors of Cybergenics Corp.,* 330 F.3d 548, 567 (3d Cir. 2003); *Pepper v. Litton,* 308 U.S. 295, 304 (1939). Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

40. Section 105 of the Bankruptcy Code confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of [section] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction ….

*Davis v. Davis (In re Davis)*, 170 F.3d 475, 492 (5th Cir. 1999).

41. Under Bankruptcy Code section 105(a), this Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtor's estate. *See Coie v. Sadkin (In re Sadkin),* 36 F.3d 473, 478 (5th Cir. 1994).

42. In sum, for the various reasons set forth herein, the fair and equitable course for this Debtor and its creditors is an orderly liquidation through a chapter 7 case for the benefit of all the creditors

under the direction of a chapter 7 trustee. Accordingly, the Trustee urges this Court to order the conversion of this case to chapter 7, consistent with the policy of equitable treatment of creditors set forth in the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests this Court enter an order, substantially in the form attached here to as <u>Exhibit B,</u> converting the Debtor's bankruptcy case from chapter 11 (Subchapter V) of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code and granting such other and further relief as this Court deems just, proper, and equitable.

Dated: August 30, 2021            Respectfully submitted,

*/s/ Katharine Battaia Clark*
**Katharine Battaia Clark**
Texas State Bar No. 24046712
**THOMPSON COBURN LLP**
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Phone: (972) 629-7100
Fax: (972) 629-7171
kclark@thompsoncoburn.com

and

Nino Przulj (*pro hac vice* application to come)
Missouri State Bar No. 68334
**THOMPSON COBURN LLP**
505 N. 7TH Street, Suite 2700
St. Louis, MO 63101
Phone:  314-552-6559
Fax:  314-552-7000
nprzulj@thompsoncoburn.com

**PROPOSED COUNSEL FOR AREYA HOLDER AURZADA (SUBCHAPTER V TRUSTEE)**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on or about August 26-27, 2021, the undersigned counsel conferred with counsel for the Debtor, for People's Capital, and for the Dallas County Taxing Authority, via electronic mail and telephone conferences. Some parties oppose the relief requested herein (the Debtor and People's Capital, for example) while the Dallas County Taxing Authority is unopposed to the relief sought in this Motion.

*/s/ Katharine Battaia Clark*
Katharine Battaia Clark

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been served (i) electronically via the Court's ECF noticing system on those parties who receive notice from that system on the 30th day of August, 2021 and (ii) via U.S. mail to the parties on the attached service list.

*/s/ Katharine Battaia Clark*
Katharine Battaia Clark